UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

ROBERT C.,[1]

      Plaintiff,

  v.

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

23-CV-327-LJV
DECISION & ORDER

_____

      On April 12, 2023, the plaintiff, Robert C. ("Robert"), brought this action under the Social Security Act ("the Act"). Docket Item 1. He seeks review of the determination by the Commissioner of Social Security ("Commissioner") that he was not disabled.[2] *Id.* On July 12, 2023, Robert moved for judgment on the pleadings, Docket Item 6; on November 8, 2023, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 11; and on November 22, 2023, Robert replied, Docket Item 12.

      For the reasons that follow, this Court grants Robert's motion in part and denies the Commissioner's cross motion.[3]

---

[1] To protect the privacy interests of Social Security litigants while maintaining public access to judicial records, this Court will identify any non-government party in cases filed under 42 U.S.C. § 405(g) only by first name and last initial. Standing Order, Identification of Non-Government Parties in Social Security Opinions (W.D.N.Y. Nov. 18, 2020).

[2] Robert applied for Supplemental Security Income ("SSI"), which is paid to a person with a disability who also demonstrates financial need. 42 U.S.C. § 1382(a).

[3] This Court assumes familiarity with the underlying facts, the procedural history, and the decision of the Administrative Law Judge ("ALJ") and refers only to the facts necessary to explain its decision.

## **STANDARD OF REVIEW**

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). The court "must first decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id*. This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (alterations omitted) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)).

"Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "The substantial evidence standard means once an ALJ finds facts, [the court] can reject those facts only if a reasonable fact finder would *have to conclude otherwise*." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (internal quotation marks and citation omitted) (emphasis in original); *see McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) ("If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld."). But "[w]here there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to

2

have her disability determination made according to the correct legal principles." *Johnson*, 817 F.2d at 986.

## DISCUSSION

### I.   THE ALJ'S DECISION

On March 30, 2022, the ALJ found that Robert had not been under a disability since July 15, 2020, his amended alleged onset date. Docket Item 5 at 31–32. The ALJ's decision was based on the five-step sequential evaluation process under 20 C.F.R. § 416.920(a). *See id.* at 18–19.

At step one, the ALJ found that Robert had not engaged in substantial gainful activity since July 15, 2020. *Id.* at 19. At step two, the ALJ found that Robert suffered from five severe, medically determinable impairments: "major depressive disorder; generalized anxiety disorder; degenerative changes of the spine; obesity; and sleep apnea." *Id.*

At step three, the ALJ found that Robert's severe, medically determinable impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See id.* at 20. More specifically, the ALJ found that Robert's physical impairments did not meet or medically equal listing 1.15 (disorders of the skeletal spine resulting in compromise of a nerve root), 1.16 (lumbar spinal stenosis resulting in compromise of the cauda equina), or 3.00 (respiratory disorders). *Id.* at 20–21. Likewise, the ALJ found that Robert's mental impairments did not meet or medically equal listing 12.04 (depressive, bipolar, or related disorders) or 12.06 (anxiety and obsessive-compulsive disorders). *Id.* at 21. In assessing Robert's mental impairments, the ALJ found that Robert was moderately limited in: (1) understanding, remembering,

or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing himself. *Id.* at 21–22.

The ALJ then found that Robert had the residual functional capacity ("RFC")[4] to "perform sedentary work as defined in 20 C[.]F[.]R[. §] 416.967(a)" except that:

> [Robert] can occasionally stoop[;] he cannot work at heights, on ladders, or near dangerous machinery. He can understand, remember, and carry out simple instructions (Specific Vocational Preparation (SVP) 1 or 2 level positions) with occasional interaction with the public and co-workers. He would be off[ ]task for up to 10% of a normal workday and out of work one time per month.

*Id.* at 22.

At step four, the ALJ found that Robert had no past relevant work. *Id.* at 30. But given Robert's age, education, and RFC, the ALJ found at step five that Robert could perform substantial gainful activity as a ticket counter, polisher, or addresser. *Id.* at 31; *see Dictionary of Occupational Titles* 219.587-010, 1991 WL 671989 (Jan. 1, 2016); *id.* at 713.684-038, 1991 WL 679267 (Jan. 1, 2016); *id.* at 209.587-010, 1991 WL 671797 (Jan. 1, 2016). The ALJ therefore found that Robert had not been under a disability since July 15, 2020. *See* Docket Item 5 at 31.

## II.  ALLEGATIONS

Robert argues that the ALJ erred in three ways. Docket Item 6-1 at 12–28. First, Robert argues that the ALJ failed to reconcile conflicts between the RFC and limitations in the opinion of Nikita Dave, M.D.—an opinion the ALJ found to be "somewhat

---

[4] A claimant's RFC is the most "an individual can still do despite his or her limitations . . . in an ordinary work setting on a regular and continuing basis." SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996). "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." *Id.*; *see Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999).

persuasive." *Id.* at 12–21.  Second, Robert argues that the ALJ's highly specific RFC finding—that he "would be off[ ]task 10% a normal workday and out of work one time per month"—was not supported by substantial evidence.  *Id.* at 21–24.  Finally, Robert argues that the ALJ failed to adequately consider his mental health limitations in crafting the RFC.  *Id.* at 24–28.  This Court agrees that the ALJ erred and, because that error was to Robert's prejudice, remands the matter to the Commissioner.

## III.   ANALYSIS

If an ALJ includes a "highly[ ]specific" limitation in a claimant's RFC, that limitation cannot come from whole cloth.  *See Tomicki v. Berryhill*, 2018 WL 703118, at *5 (W.D.N.Y. Jan. 11, 2018).  Therefore, when the record provides no support for a specific amount of time that a claimant will be off task, a specific finding toward that end is not supported by substantial evidence.  *See, e.g.*, *Cosnyka v. Colvin*, 576 F. App'x 43, 46 (2d Cir. 2014) (summary order) (remanding where the ALJ's off-task determination "was not based on the record but was the result of the ALJ's own surmise"); *Tomicki*, 2018 WL 703118, at *5 ("[T]he record does not support the ALJ's conclusion that [the claimant] needs to briefly switch between sitting and standing only every thirty minutes.  The ALJ did not cite any evidence to support this highly[ ]specific sit-stand option.").  That was precisely the case here.

On September 9, 2020, Dr. Dave completed an internal medicine examination of Robert.  Docket Item 5 at 410–13.  Dr. Dave opined that Robert was moderately limited in "prolonged sitting, standing, walking, lifting, carrying heavy objects, and repetitive climbing."  *Id.* at 413.  And Dr. Dave concluded that Robert would need "rest intervals

5

frequently to change positions or [to] allow for [the] position most comfortable for [Robert]." *Id.*

The ALJ determined that those limitations, along with Robert's subjective complaints of pain and fatigue, would require Robert to be "off[ ]task for up to 10% of a normal workday." *Id.* at 22, 28. But the ALJ did not explain how the limitations about which Dr. Dave opined translated to an "up to 10%" time off task. *See id.* at 22–30. Nor do the medical opinions or evidence shed any light on that specific finding. Indeed, why the ALJ chose that specific amount of time off task—"10%" as opposed to 5% or 20%, for example—is anyone's guess. And by crafting a specific limitation without support in the record, the ALJ erred. *See, e.g.*, *Ramon H. v. Comm'r of Soc. Sec.*, 2024 WL 4448900, at *3 (W.D.N.Y. Oct. 9, 2024) (remanding where the record lacked "any specific evidence to support that [the p]laintiff would be off[ ]task only 5% of a workday . . . as opposed to 10% or 15% or 18%"); *Tara W. v. Comm'r of Soc. Sec.*, 2021 WL 4316824, at *3 (W.D.N.Y. Sep. 23, 2021) (remanding when an ALJ found that a "[p]laintiff can be off task 5% of the day" but "failed to explain *where* that specific percentage of 5% came from, or why he assessed that percentage as opposed to one higher or lower" (emphasis in original)).

In an effort to suggest otherwise, the Commissioner argues that because the off-task limitation was "tethered" to Dr. Dave's opinion and Robert's subjective complaints, it was not cut from whole cloth. Docket Item 11-1 at 18–19. In fact, the ALJ explicitly referred to Dr. Dave's opinion when finding that "an allowance for some off-task behavior" was necessary. *See* Docket Item 5 at 28. And had the ALJ simply adopted Dr. Dave's limitations—had the RFC read, for example, "needs frequent rest intervals"

6

or "no prolonged sitting, standing, or walking"—the Commissioner's argument might have merit.

But the ALJ did not do that. *See* Docket Item 5 at 22. Instead, the ALJ translated the limitations about which Dr. Dave opined into a highly specific—"up to 10%"—time off task. *Id.* And because the ALJ was not a medical professional, she was not entitled to make that translation herself. *See Cosnyka*, 576 F. App'x at 46; *Michelle A. v. Saul*, 2020 WL 7223235, at *4 (W.D.N.Y. Dec. 8, 2020) ("The ALJ cites to no evidence in the record, medical or otherwise, suggesting that plaintiff would be off[ ]task for this specific percentage of time.").

The Commissioner cites Robert's testimony that it hurt to squat, bend, stand, or sit for extended periods—as well as medical evidence suggesting that Robert experienced low back pain—as evidence supporting the ALJ's off-task finding. *See* Docket Item 11-1 at 18–19. To be sure, that evidence supports Dr. Dave's conclusion that Robert required frequent rest intervals to change positions. *See* Docket Item 5 at 413. But it still does not explain how the ALJ found—based on that evidence—that Robert would be "off[ ]task for up to 10% of a normal workday." *Id.* at 22.

What is more, this Court cannot conclude that the ALJ's error was harmless. While the vocational expert provided several jobs consistent with the limitations in the RFC, *see* Docket Item 5 at 58–59, she also made it clear that being off task more than ten percent of the time would be work preclusive, *see id.* at 59–60. So a greater time off task may well make a significant difference. *See Cosnyka*, 576 F. App'x at 46 ("[T]he vocational expert's opinion on whether there were jobs [the claimant] could perform varied depending on how the off-task time was defined."); *Edwards v. Comm'r of Soc.*

*Sec.*, 2020 WL 4784583, at *4 (W.D.N.Y. Aug. 18, 2020) ("The [vocational expert] testified that, if the off-task time was ten percent or more, the limitation would be 'work preclusive.'  Accordingly, the Court cannot say that the ALJ's failure to tether the precent of off-task time to evidence in the record was harmless error." (internal citation omitted)).[5]

In sum, the ALJ erred in crafting a highly specific off-task limitation that was unsupported by the record.  *See Tomicki*, 2018 WL 703118, at *5.  And because that error was not harmless, remand is required.  *See Tara W.*, 2021 WL 4316824, at *4.[6]

---

[5] The ALJ's choice of "10%" is particularly troubling given the vocational expert's testimony that anything more would preclude work.  It indicates that "[a]t best, . . . the ALJ's [finding] c[ame] from whole cloth" and "[a]t worst, [it] responds to the vocational expert's testimony."  *Elder v. Comm'r of Soc. Sec.*, 2019 WL 6320355, at *6 (W.D.N.Y. Nov. 26, 2019).

[6] The Court "will not reach the remaining issues raised by [Robert] because they may be affected by the ALJ's treatment of this case on remand."  *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003); *see Beers v. Comm'r of Soc. Sec.*, 449 F. Supp. 3d 96, 103–04 (W.D.N.Y. 2020).

## **CONCLUSION**

The Commissioner's motion for judgment on the pleadings, Docket Item 11, is DENIED, and Robert's motion for judgment on the pleadings, Docket Item 6, is GRANTED in part and DENIED in part. The decision of the Commissioner is VACATED, and the matter is REMANDED for further administrative proceedings consistent with this decision.

SO ORDERED.

Dated: February 23, 2026
         Buffalo, New York

                                       */s/ Lawrence J. Vilardo*
                                      LAWRENCE J. VILARDO
                                      UNITED STATES DISTRICT JUDGE